Good morning, may it please the court, your honors, Paul Gabbard for the Clement & Appellant, UMCC. The district court correctly ruled the first time. The Los Angeles Police Department's state search warrant was obtained in violation of Franks, it violated the Fourth Amendment, it was appropriately quashed and suppressed, and all the evidence seized under it had to be suppressed as a fruit of the illegal search warrant. The resulting taint from this intentional and flagrant constitutional violation is continuous, it never dissipated. The district court correctly found and repeated in its subsequent opinion that the field standing declaration submitted in state court was causally connected to, from my client and... Did the affidavit or declaration require, is it Mr. Field? It's Mr. Field, yes. Mr. Field to state that the currency was connected with activities that violate federal law? Your honor, the answer to that... Why don't you start with a yes or no? I'm going to. No. However, the state court lawyers were affirmatively misled into believing that they were making a motion for return of property in state court because it was a state court warrant, a state court investigation, and therefore the property, the return, once they found it, after they hid it for several weeks, and therefore they found the affidavit, that it was in state court. And the whole point of what the state lawyers were doing at the time was to explain that the money was lawfully obtained consistent with California's two medical marijuana statutes. And they weren't concerned, and there was no reason for them to be concerned, because they were affirmatively misled, just as the issuing magistrate had been, by LAPD's failure to tell them that they were going to hide the affidavit and file it in a different court, and then mislead that judge into issuing a turnover order after they had been ordered to file the return back in the issuing magistrate's court, and after the state had refused institute forfeiture proceedings, and after the state had refused institute criminal proceedings, and after they had violated the state statute, which gave them four options, which were to hold the money for evidence of a state criminal prosecution, which wasn't there, to hold the money for state forfeiture, which was rejected, to turn it over to the franchise tax board, or to give it back to the claimant. They also did none of those things. So the fourth thing that the district court found correctly and reiterated in his subsequent opinion was that the declaration was submitted for the very purpose of counteracting LAPD's illegal seizure of the property. You're not challenging the turnover order as itself. I mean, to me, from what I understand happened here, the notion that the state could turn the money over to the federal government, even though they had gotten it essentially in an improper fashion, doesn't make a lot of sense. But you're not challenging that as such. I'm not challenging it because once it was done, it was done. And it was ultimately done by the issuing magistrate, and that's under the bridge, Your Honors. It's – I believe that they didn't have that option. You can't challenge the race itself. Excuse me. I didn't hear you. I said there is some case law that you can't challenge the race itself. It's not that you can't challenge it. It's just it's unnecessary to reverse this wrong decision. And the case law says that if they're – when they take it without a turnover order, this is the short version. The definitive opinion on this is a case that Judge Patel wrote out of the Northern District of California in the FSUP. It's not in the papers. I can't call it off the top of my head. But that's the definitive opinion on these overlapping in-rim jurisdiction and comedy between state and federal courts and who first glomps onto it and so on. But the reason I bring that up is that's part of the serial misconduct that occurred here, which actually started even before they lied to the issuing magistrate. This is a footnote. But Judge Wilson dismissed because they didn't – I'm not challenging any of that. It's not helpful. I mean – Okay. Then I'll leave it. But I was going to tell you that – anyway. As far as I can tell, we're now in a situation where I have the same basic question that Judge Hawkins does, and that is, assuming there could be a situation in which there was a fruit-of-poisonous-tree issue here, why isn't the fact that this declaration seems to say more than it needed to say, basically, I don't know, whatever we call it, break the taint or whatever one wants to say about it? Because simply the declaration – turn it around. None of the declarations that were submitted in support of the successful motion in federal court or anyone has ever contended would be used against the claimant. And the Sephiric case stood for the proposition which was relied on by Simmons, that when you – you can't use your motion papers against you once you're successful. This is the only reported case since Simmons that I know of where a successful Fourth Amendment litigant wins the suppression motion and loses the case because his moving papers are used against him. But the biggest problem here, isn't it, is the question of corporate Fifth Amendment rights. Well – I mean, isn't that – isn't – It's really – And the real question to me is, is that positive, or there are circumstances where – Fial himself had his own Fifth Amendment problems, presumably. You know, it's misleadingly important. There's no argument that corporations have Fifth Amendment rights. There is an argument that – there is no argument that corporations do not have Fourth Amendment rights. The question is, how do we effectuate them in this peculiar fact pattern? And what happened here was they filed this declaration believing it to be the correct thing. This was a motion for a return of illegally seized property on the same grounds that the claimant was successful on before Judge Wilson. So isn't the problem that you're then pulling – that the corporate Fifth Amendment problem pulls Simmons out, and now you're just on a straight-taint argument, no? Because the tension envisioned by Simmons was between the self-incrimination clause and the Fourth Amendment, you're correct because the corporation has no self-incrimination clause. I would submit that the corporation doesn't give up its due process rights not to be deprived of its property in order to assert its Fourth Amendment rights, and that that's another way of getting there. But I think the taint argument is cleaner because of the fact that what happened here was when this – when this theory was come up with by the LAPD, whom I submit is the real party in interest in this case, that there was this imaginary federal search warrant, which never existed, based upon this probable cause that was never communicated to the state court judge that nobody knew existed. I didn't read the district court as relying on that anywhere near as much as you do. It seemed to be a fifth-level argument as to the Harrison or Harris case. No, he's not relying on the Fifth Amendment. What the district court said was, after he got it right the first time, was, oh, I was wrong. Because there was probable cause for a federal violation, this was only a Rule 41 violation and not a constitutional violation, and therefore there's no taint, and therefore, since the Fourth Amendment's not implicated, there's no taint doctrine. Well, what he first said was the whole taint theory doesn't apply to this. And then he said, and even if it does, but the first thing he said was the whole taint theory doesn't work here. Well, ultimately, on page 71 of his ruling, he says it doesn't apply and the Fourth Amendment's not implicated. What I'm urging – And I think the government basically agrees with you about the hypothetical probable cause, so I think we can wash that all out. Well, except that it was the foundation for his opinion for approving a warrantless search. Well, if you're wrong about that, let's leave it out. It doesn't seem to be at issue particularly. Well, if it doesn't seem to be at issue, this was a warrantless search, and it tainted everything that flowed from it, Your Honor. And what flowed from it was his declaration, which the claimant and his lawyers were affirmatively and repeatedly misled to believe was in state court. And they filed this declaration. And I want to make this point again. No one urged that the declarations that were submitted on behalf of the corporations, since corporations can only act through people, somehow could be used against them once the suppression motion was granted in federal court. So Thiel made the mistake of filing a declaration that wouldn't have been used against him in federal court, in state court, because he was affirmatively misled by the real party in interest. But tell me why it wouldn't have been used against him in federal court. I thought the whole assumption here is it would have been. None of the declarations we filed in support of the suppression motion in federal court, which were all done by human beings who all had Fifth Amendment self-incrimination clause protections and all filed their declarations under Simmons. No one ever took up that those could be used against them. Well, he also obviously had a Fifth Amendment right under him. He had a personal Fifth Amendment right. Just a minute. Sorry. And the declaration would appear to incriminate him as well as the corporation. Correct. So, but the money isn't his. That's the problem. Well, that's correct. And so you could make the technical argument that, fine, we won't use it against him, but we'll admit it against the corporation and we get back to the same place we are. One of the many problems with this is that it violates fundamental Fourth Amendment law in terms of the taint. Because if this, based on the district court's own findings and the purpose and flagrancy of the violation here, which was continuous and continued all the way through the case, the declaration was clearly tainted. The district judge made this point. He said, well, there's nothing to support your position. We cited sephiric to them on innumerable occasions. It never surfaced in Judge Wilson's second opinion. It never surfaced in the government's brief. In sephiric, exactly what happened here, and it was cited by Simmons in a footnote, is saying when you are successful on the motion to suppress, your declaration gets suppressed as a tainted fruit of the poisonous tree. Now, what happened is once we got the Simmons rule of qualified judicial use immunity, we didn't need taint analysis to protect the declaration. What happened here was after the judge originally characterized their position as surreal, he then adopted it. And since the state warrant was quashed and there was no federal warrant, it never matters if the police have probable cause for some other crime that they don't present to a judge. That's been the rule since Agnello versus the United States in 1925. That's what happened in the second. What I understood from the district court. Pardon me? The distinction I understood the district court to be drawing in his second decision was that there wasn't a federal constitutional violation. Correct. That's what he said after he said there was in the first opinion. Well, we're here. It's not the first judge to have changed his mind. So if it's not a federal constitutional violation, where are we? Well, he was wrong. It was a federal constitutional violation because the warrant was in. He never changed his findings. The warrant was in violation of Franks. Franks is a bad, by definition, a bad faith violation of the Fourth Amendment. So there was a constitutional violation. His notion that this was a Rule 41 violation is just wrong. You want to get to step six. I'm still on step two. If I don't get past step two, I'm not going to follow your argument. You say it's a Franks violation. Why? Because they lied to the magistrate to get the warrant through a material omission, as he properly found. But under federal law, it wasn't a material omission. But the point was you don't get to. You can't imagine a federal warrant any more than you can imagine. I'm not asking you to imagine a federal warrant. I'm saying what's the federal violation? The federal violation was this wasn't a federal warrant. They weren't applying for a federal warrant. It was a state judge. It's not a federal warrant. I'll stipulate. What's the federal violation? The federal violation was the violation of the Fourth Amendment because they lied to the magistrate to get a state court warrant. And the fact that the judge re-characterized it was getting the money based on an invalid, bad faith warrant. Exactly. And it wouldn't have gotten had they told the truth. They would have never gotten had they told the truth. And this was, you know, Judge Clifton, I'm really trying to respond to you, but what happened here is so appalling to me. I understand it's appalling. Frankly, it's somewhat appalling to me, too. But we've got a system of law that's different in the federal court than in the state. You point at the clock, but I'm waiting for an answer to my question. The Supreme Court has said very clearly with regard to a very different context, granted, that federal constitutional law doesn't turn on state statutes. Of course it doesn't. Well, the omission here is not an omission that made any difference in federal court. It made a difference in federal court because this was an invalid state warrant. It was simply re-characterized after the fact. It's saying what they could have done. They manufactured this hypothetical warrant and said if there had been a federal warrant. That's like saying in Gabbard v. Kahn, if they'd searched the briefcase the second time with a special master, it wouldn't have been a warrantless search. That's like saying in Agnello v. United States that because they had probable cause to search Mr. Agnello's house, if they got a search warrant, it would have been lawful. That's what Judge Wilson did here, and that's what has to be changed. Because once you change that mischaracterization of this to the surreal Rule 41 violation, the way he correctly characterized it in his initial 24-page suppression ruling, then the whole analysis that Taint doesn't apply falls. And all my time is almost gone, so can I save 28 seconds? We'll give you a minute. Thank you. We'll hear from the United States at this time. Mr. Parham? Good morning, Your Honors. Greg Parham, Special Assistant United States Attorney for the United States Government. I think the Court has pointed out some of the problems that the government viewed as crucial to Judge Wilson's opinion in this case. We just ask questions. Well, we — Doesn't every — is the fact that the corporation doesn't have Fifth Amendment rights the pivot? I mean, otherwise it seems to me you couldn't possibly be right. I think it is a crucial factor, and I think that Judge Wilson considered it his primary basis, if you will, for denying the claimant's summary judgment motion. But there's another long discussion that I really don't understand about the fact that the self-incrimination privilege doesn't apply to forfeiture proceedings. I don't — does your position depend on that in any way? I don't have a — I don't understand why it would. I'm not sure if the Court deals with forfeiture enough to know this, but the Fifth Amendment has a different application in the forfeiture world. Well, I understand that. It isn't a question of what proceeding you're in. The question is whether you're incriminating yourself. I mean, as I understand it, if you're in a civil proceeding and somebody says to you — subpoenas you and asks you the question of whether you committed a murder, you can invoke your Fifth Amendment rights, whatever proceeding you're in. Yes, I suppose you could. So I don't understand the relevance of that. It seems totally irrelevant, and he goes on for pages about it. Yeah. It's a long opinion. Right. A lot of moving parts. Can we back that out and say it doesn't matter? Well, I think — I think — I want to address some of the points raised by a defense counsel, if I can. He talked about the affidavits that were submitted in support of not only the state warrant, but also the federal warrant. Now, he highlights the fact that Mr. Feele in his state court return of property motion affidavit — What if he had introduced this affidavit in the federal proceeding in order to — just directly, and the rest of it had never happened? The very same affidavit? I think he would be, for lack of better words, dead in the water. He would be basically admitting that this money is forfeitable under federal law. Now, what is curious — Even if he needed to do that in order to get — in order to litigate his suppression — a suppression determination? Well, he — Suppose there had been a federal search and a federal warrant, and he wanted to have a federal suppression motion, and he couldn't — there's no way he could establish enough standing over the property to in order — without incriminating himself? Under federal law, he has the option of staying the proceedings. He has a statutory right to say, because I'm the subject of a criminal investigation, court, please stay this action until that matter is resolved. But the corporation isn't. The corporation isn't. In other words, your whole premise here is that the corporation has no Fifth Amendment rights. Correct. The corporation — so why would you take the same position and put it in a complete box so he can never litigate the forfeiture? We didn't choose who the claimant would be in this case. The claimant is a corporation. Right. The claimant is not Mr. Feele. And repeatedly, they cite — The answer is he could not, in a federal — if he had federal suppression, ruin the uniform of his proceeding, introduce a declaration that says this money belongs to the corporation, without giving up his rights. Correct. Correct. And that wouldn't be a due process violation or anything else? I don't believe it would be, based on, you know, the law that we've cited in our brief. I don't — I believe it's much like the situation that was discussed by Judge Wilson and Taylor. Civil litigants have choices they can make in litigation. Sometimes those choices have negative consequences for you vis-à-vis the criminal justice system. Even if the underlying claim is a constitutional Fourth Amendment violation that you want to litigate, but you can't litigate it the way you're now setting this up. No way. Well, I would disagree with the notion that it was a Fourth Amendment violation. No, but if it was an alleged Fourth Amendment violation, you're saying there was no way to litigate that because you can't assert enough — the corporation cannot assert authority over this property enough to get standing to litigate it? Yes. That's a tough position. One of the things I wanted to point out, though, is that the declarations are different. If you look at the state court declaration, there's no indication in the state court affidavit submitted by Mr. Field that he was reserving or stating any sort of Simmons objection. The declaration submitted in the motion for summary judgment, however, submitted on behalf of individuals associated with UMCC, did in fact set forth specific Simmons objections or reservations. But did they have reason to be concerned about prosecution in state court? They didn't, Your Honor, because I believe if you look at the defense motions that were filed in state court, the defense conceded or admitted that the Los Angeles County District Attorney's Office had rejected the case or declined the case for prosecution in late March of 2005. I think I'm missing the significance of what you're pointing out to me. It seems to be utterly logical for them not to include discussion in the state court declaration that reflects concern about possible prosecution if they didn't have any concern about possible prosecution. In federal court, well, yeah, medical marijuana isn't accepted. That's true. So what's the point you're making here? Well, that's the point, that there was still the potential that they could have been brought into federal court on federal charges. Well, but that sort of begs the question. I mean, are they supposed to look down the road and anticipate the lateral of the money, which they didn't know about at the time? I guess they could anticipate the possibility of federal prosecution because, at least as of the last administration, there were federal prosecutions going on a regular basis. And I'll futilely toss out the question. I have heard that the current administration is changing its policy with regard to medical marijuana. You're not going to tell us we can go home because you're not going to pursue this case any longer, are you? Your Honor raises a very interesting point and one that actually took me by a bit of a surprise a couple of weeks ago. But I am here to tell the court that this issue has been discussed, regardless of the new attorney general's position on whether or not medical marijuana dispensaries will be rated in California. I've conferred about the validity or the viability of this appeal in this case with U.S. attorney management, and we are confident that this case is still viable and we're confident. Was that a shot? We're confident that based on our belief that UMCC probably also violated state law, as currently known, that this case would still be brought. Maybe this is kind of like the old budget, right? Do you have anything else for us? Let me ask you to focus on the attenuation. Why is it, you know, the dominoes started falling, and were it not for the warrant that was obtained in the first instance, that no one disputes was obtained validly, we wouldn't have the last domino falling. Why is this too far a reach for the fruit to be considered poisoned? We will concede that there was a but-for causation. The illegality of obtaining the warrant led to the filing of this motion. However, as the appellant seems to suggest, once attained, always attained. Yet, that's not the law. The law says there can be a taint, but that taint can be attenuated. And what we have argued and what we believe has happened is that through the passage of months, through advice of counsel, through no longer being subject to police authority. Advice of counsel, this is why I was asking the question I was asking. Your ultimate advice, if you were the counsel, as I understand it, you would advise him there's nothing he can do to get the money back to the corporation. Nothing. He could wait for the matter to be brought in federal court and litigate it in federal court. How? You just explained to me that he could not file this declaration in federal court. So he couldn't assert any interest in that money, and therefore he would never have standing to litigate the fact that it was originally obtained illegally. Well, I think he could, and he could do it in this fashion. And I think the court touched upon it earlier when it asked, basically, did UMCC or did Mr. Field correctly have to go in such explicit detail in his declaration? And the answer is absolutely not. Well, ordinarily though, and to me that is the most problematical part of this case, but does anybody in the Simmons context ever pierce the, I mean, isn't it the basic notion that we ought to be able to litigate this as one ordinarily litigates without measuring every word and tell the whole story and get it out, and that the court is better off to know more rather than less? I would agree that more information is better than less information. So if everything is going to turn in the fact that he, because he didn't think he had a problem doing it in the context in which he was doing it, told more of the story instead of less, that's another kind of position. More information from the standpoint of the court assessing whether or not there's a problem, but if he makes an explicit statement basically admitting a violation of not only state but also federal law, he does so to his own detriment, and that's what we think is the big problem with his affidavit. He could have merely stated in his declaration, this money belongs to UMCC, California Corporation, end of story. UMCC is the lawful owner, end of story. And at that point the government wouldn't come back and say, well, he hasn't given any supporting facts, why should you believe him? At least let's have a hearing. Then you'd have a hearing. Whose money was it? What was it doing there? Why did you have it? Why is anybody going to believe a piece of paper like that? Ultimately the issue would have to be decided whether the government's view of where the money was derived from prevailed over what the claimant believes is the origin of the money. The circumstances are going to come out. Correct. But that doesn't impact the government's initial burden at the pleading stage to say, was there a reasonable cause to initiate this lawsuit? The corporation will, on your theory, never get its money back without exposing information of this kind in the end. Admittedly they are between a rock and a hard place. Well, suppose in federal court to establish standing all you've got to do is establish that you've got a claim to the money and it was taken from their premises. So they probably have a hard time proving that. Their problem is going to come at the next step. Correct. But there is a next step. And at some point I look at what they did. The problem, of course, is they didn't know that the matter was going to be in federal court instead of state court. So what you had was a party. I mean, I sit there and say, suppose I'm the lawyer. What do I tell them to do? Well, I hope I'd be cognizant of the federal potential problem, and I'm sure anybody in the medical marijuana field is. But they think they're in state court. They're trying to move things along probably for their perspective. The sooner they can get this issue resolved, both the sooner they get the money and the less likely it is it's going to come to the attention of the federal authorities. So it makes sense for a lawyer to say, put it all out there at the first instance and try to wind this up quick. And that comes back and bites them. And since they've got no way of knowing it's going to be in federal court, I take a step back here and say, well, there's not really an attenuation here. There's a passage of time, but that's because of the difference between the criminal prosecution and the forfeiture. So other than the passage of time and the fact that it went from state court to federal court, what is the attenuation? Why shouldn't we pay attention to the circumstances? They understand what we thought they were operating under. The attenuation is simply the advice of counsel in this kind of setting. I think the court is... But where did counsel go wrong? I ask myself, if I'm the lawyer, what do I do differently? And it seems to me that's what you'd expect the lawyer to do. As a lawyer, you'd be fearful that stage number two in any forfeiture proceeding, started in state court, is the possibility that it's going to jump to the federal court. That's why I keep coming back to this question of is there any advice the lawyer could have given that would have gotten him the money back in state or federal court? And your answer essentially is no. So this has to be... I mean, that goes to the attenuation question because it means that this is the inevitable result if you want to have any prospect of getting the illegally seized money back. There was no other way to do it. How about a declaration submitted by a lawyer representing the corporation where there is no admission of facts which would support any kind of... You just played that string out and determined that whatever the declaration itself said, before anybody was actually going to adjudicate a suppression motion, there was going to have to be more information. I can envision a circumstance where the lawyer representing UMCC could have rightfully submitted the same declaration, but not in the detail that was submitted in the field declaration and at least established standing. It's going to have to be adjudicated before anybody is going to believe it. That's true. And then the same information is going to come out and it's going to be in the same table. Well, perhaps. But we can't undo the criminal activity that UMCC was involved in. They sort of created the uncomfortable position they now find themselves in. The government didn't. Okay. Thank you. Ravana? There was no attenuation. It was a search. Judge Clifton is correct. The only thing that happened was the passage of time. He's correct about the advice of counsel. One of the many things that will be undercut here is if you can't challenge this at the probable cause stage under 19 U.S.C. Section 1615, and the first part of Judge Wilson's opinion, which is correct, which the Ninth Circuit independently arrived at the same conclusion, then one of the major congressional barriers to stopping these disfavored forfeitures that are supposed to be enforced only when they're within the letter and the spirit of the law, goes away because as a corporation, effectively, you have no Fourth Amendment rights because you can't assert them because you're not protected by Simmons. And that just can't be correct because it encourages the police to do exactly what they did here, which is violate the Constitution for profit. They're getting 80%. It's a contingency fee, and if a lawyer took that fee, he'd be in front of the bar. Okay. Thank you both for your arguments. Very interesting case. It will be submitted for decision, and we'll proceed to the last case on the argument calendar, which is the United States v. O'Reilly. If counsel will come forward, please.
judges: Hawkins, Berzon, Clifton